UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHARLES RUMSEY, et al.,

        Plaintiffs,                            Hon. Janet T. Neff

v.                                    Case No. 1:10 CV 880

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on Defendants' Motion to Dismiss Plaintiff Barnes and Plaintiff Davis, (dkt. #53), and Defendants' Motion for Summary Judgment, (dkt. #72). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' Motion to Dismiss Plaintiff Barnes and Plaintiff Davis, (dkt. #53), be **granted**, and Defendants' Motion for Summary Judgment, (dkt. #72), be **granted in part and denied in part** as detailed herein.


## BACKGROUND

        This action was initiated on June 23, 2010, by seven present and former prisoners: (1) Charles Rumsey; (2) Herschel Davis; (3) Steven Cohrs; (4) Timothy Hollon; (5) Morris McCord; (6) Leo Niezgoda; and (7) Warder Barnes. The following allegations are contained in Plaintiffs' complaint. (Dkt. #1). Plaintiffs "are all practitioners of the religion known as the 'Native American Traditional Way'" which is "based upon the teachings and practices of some Native American Tribes." One of the practices with which adherents of this faith "are required" to comply is "congregating and offering

prayers within a 'sweat lodge.'" More than 15 years prior to the events giving rise to this action, members of the Native American Traditional Way (NATW) constructed a sweat lodge on the grounds of the Muskegon Correctional Facility (MCF). Beginning in 2005 and continuing until MCF was closed in 2010, Defendants "conspired, combined and/or acted in concert to deny" to Plaintiffs the ability to freely practice their religion. A more detailed discussion of the allegations in Plaintiffs' complaint is contained below.

Plaintiffs initiated the present action against the Michigan Department of Corrections (MDOC) and the following individuals: (1) Mary Berghuis, (2) Carol Aardsma, (3) Rick Smith, (4) Sheryl DiEpifanio, (5) Mark Sutherby, (6) Raymond Swierenga, (7) Shirlee Harry, (8) Michael Singleton, (9) Sharon Walker, and (10) Sharon Wells. Plaintiffs assert that Defendants violated their First Amendment right to freely practice their religion. Plaintiffs seek declaratory, injunctive, and monetary relief. Plaintiffs' claims against Defendants MDOC, Berghuis, Aardsma, Smith, Sutherby, DiEpifanio, and Wells have since been dismissed. Plaintiff's official capacity claims against Defendants Swierenga, Harry, Singleton, and Walker have also been dismissed. Defendants Swierenga, Harry, Singleton, and Walker now move for dismissal and/or summary judgment as to the claims remaining in this matter.


## ANALYSIS

**I.**         **Federal Rule of Civil Procedure 8**

At the outset it is necessary to specifically identify the claims asserted by Plaintiffs in their complaint. From the outset of this matter, Plaintiffs have been represented by counsel. Thus, when

analyzing Plaintiffs' complaint, such is not entitled to any sort of indulgent reading or interpretation. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8 provides that a pleading that "states a claim for relief" must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading need not contain "specific facts" so long as such affords the defendant "fair notice of what the. . .claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Nevertheless, a pleading that, rather than articulating a "a short and plain statement of the claim," instead incorporates by reference allegations contained elsewhere fails to comply with Rule 8. *See, e.g., Rashdan v. Geissberger*, 2011 WL 197957 at *10 (N.D. Cal., Jan. 14, 2011) (where plaintiff, rather than articulating a short and plain statement of her claim, "merely incorporate[d] by reference" allegations articulated in a previous portion of her complaint such "shotgun pleading. . .fails to provide Defendants with fair notice" of the basis of plaintiff's claim); *Morton v. SunTrust Mortgage, Inc.*, 2010 WL 5055822 at *3 (N.D. Ga., Nov. 5, 2010) (where each count in the complaint "incorporates by reference the allegations made in the previous paragraphs," such results in a pleading "replete with factual allegations that could not possibly be material to that specific count, and. . .any allegations that are material are buried beneath innumerable pages of rambling irrelevancies").

Plaintiffs' complaint, while incredibly vague, nevertheless articulates several claims in a manner that satisfy the requirements of Rule 8. Specifically, Plaintiffs allege that Defendants directed that the sweat lodge that NATW members utilized in their religious services be dismantled. (Dkt. #1 at ¶ 15a). Plaintiffs allege that Defendant Swierenga informed them that certain unidentified religious "artifacts and supplies" had been stolen when, in fact, Swierenga simply "concealed" them in a locker. (Dkt. #1 at ¶ 15b). Plaintiffs allege that Defendants ordered Plaintiffs "to move their [religious]

ceremonies indoors." (Dkt. #1 at ¶ 15c). Plaintiffs allege that Defendants enacted a policy "requiring all religious organizations to have membership of 5 or more in order to be able to gather and/or use prison facilities for worship." (Dkt. #1 at ¶ 15d). Plaintiffs allege that whenever they "exceeded the 5 member, membership requirement. . .defendants caused the transfer of one or more members of the faith to other facilities." (Dkt. #1 at ¶ 15e). Finally, Plaintiffs allege that the "MDOC imposed a ban on smoking at all MDOC facilities" the effect of which violated Plaintiffs' ability to freely practice their religion. (Dkt. #1 at ¶ 15g).

These aspects of Plaintiffs' complaint are sufficient to afford Defendants fair notice of their claims. There is, however, one aspect of Plaintiffs' complaint that runs afoul of Rule 8 and, therefore, fails to articulate a valid claim for relief. In addition to the "specific" allegations identified above, Plaintiffs further state that "Defendants employed a variety of acts, practices or abuses of their authority, *including those set forth in the attached grievances*." (Dkt. #1 at ¶ 15) (emphasis added). The "attached grievances" to which Plaintiffs refer consist of more than three-hundred (300) pages, many of which are simply illegible. Rather than expend the effort necessary to include in the complaint the relevant allegations from this mountain of documents, Plaintiffs' counsel simply attached such as exhibits to the complaint.

As discussed above, such "incorporations by reference" do not comply with the "short and plain statement" requirement of Rule 8. Simply put, a review of the grievances attached to Plaintiffs' complaint reveal that such are "replete with factual allegations that could not possibly be material to" any claim and "any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *SunTrust Mortgage, Inc.*, 2010 WL 5055822 at *3. Thus, to the extent that Plaintiffs seek to incorporate by reference into their complaint additional claims for relief based upon

the allegations contained in the material attached to their complaint, the Court rejects such. Accordingly, the Court finds that the only claims asserted by Plaintiffs in this matter are the six claims, identified above, articulated in sub-paragraphs (a) through (g) of paragraph 15 of Plaintiffs' complaint.

## II.         Plaintiff Barnes - Failure to Prosecute

Defendants first seek to dismiss the remaining claims asserted by Plaintiff Barnes on the ground that Barnes has failed to properly prosecute this matter. Specifically, Defendants argue that dismissal is appropriate because Plaintiff Barnes refuses to make himself available for deposition.

Plaintiff Barnes was released from the custody of the MDOC on August 26, 2010. On December 27, 2011, Plaintiff's counsel was notified that Barnes' deposition had been scheduled for January 17, 2012. (Dkt. #29; Dkt. #53, Exhibit 1). Plaintiff Barnes' deposition was subsequently rescheduled, at Plaintiff counsel's request, to February 7, 2012. (Dkt. #53, Exhibits 2-3). Defendants assert that on February 6, 2012, the day before Plaintiff Barnes' deposition, Plaintiff's counsel requested that Barnes' deposition again be rescheduled because counsel had failed to notify Barnes of his scheduled deposition. According to Defendants, Plaintiff's counsel indicated that he was unaware that Barnes had been released from custody and, as a result, required additional time to attempt to make contact with his client. Plaintiff's counsel does not dispute these allegations.

The parties subsequently stipulated to an extension of the discovery deadline so as to afford Plaintiff's counsel time to locate his client. (Dkt. #32). On August 8, 2012, Defendants' counsel notified Plaintiff's counsel that Barnes' deposition was rescheduled for September 11, 2012, at 1:30 p.m. (Dkt. #53, Exhibit 6). Defendants assert that when Plaintiff's counsel appeared for the deposition of a different Plaintiff on the morning of September 11, 2012, Plaintiff's counsel stated that Plaintiff Barnes

would not be appearing for his scheduled deposition that afternoon. Plaintiff's counsel allegedly stated that he had been unable to locate Plaintiff Barnes. Again, Plaintiff's counsel does not dispute these allegations.

After securing yet another extension of the discovery deadline, Plaintiff Barnes' deposition was rescheduled for October 11, 2012. (Dkt. #53, Exhibit 8). On October 8, 2012, Plaintiff's counsel informed Defendants' counsel that he had "not been able to locate" Barnes. (Dkt. #53, Exhibit 9). Defendants' counsel declined to yet again reschedule Plaintiff Barnes' deposition and instead now moves to dismiss Plaintiff Barnes' remaining claims for failure to prosecute. Plaintiff's counsel concedes that he does not know where Barnes resides and is unable to communicate with his client.

As the United States Supreme Court long ago recognized, "[t]he authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted." *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629 (1962). This authority "is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id.* at 629-30. Failure by a plaintiff "to prosecute or to comply with these rules or a court order" constitutes grounds to dismiss the complaint, or any particular claims therein. *See* Fed. R. Civ. P. 41(b).

When examining whether dismissal under Rule 41(b) is appropriate, the Court must consider the following factors: (1) whether the party's failure to cooperate is due to willfulness, bad faith, or fault; (2) whether the adversary is prejudiced by the party's dilatory conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered. *See Schreiber v. Moe*, 320 Fed. Appx. 312, 317-18 (6th Cir.,

Nov. 5, 2008) (quoting *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 992 (6th Cir. 1999)).

Consideration of these factors leads the Court to recommend that Plaintiff Barnes' remaining claims be dismissed for failure to prosecute this matter. Plaintiff's counsel may be correct that Barnes is unaware that his deposition has been scheduled (on several occasions) in this matter. If such is the case, however, it is the result of Plaintiff's willful behavior to not communicate with his attorney. Defendants are without any doubt prejudiced by their inability to depose Plaintiff. The present motion constitutes sufficient notice that failure to prosecute could result in dismissal. *See Drumgoole v. American Airlines, Inc.*, 316 Fed. Appx. 606, 607 (9th Cir., Mar. 4, 2009) ("there is no warning requirement regarding the possibility of dismissal when dismissal follows a noticed motion under Federal Rule of Civil Procedure 41(b)"). Finally, the Court finds that dismissal is the appropriate sanction under the present circumstances. Accordingly, the undersigned recommends that Plaintiff Barnes' remaining claims be dismissed with prejudice for failure to prosecute.

## III.          Exhaustion

Defendants next seek the dismissal of many of Plaintiffs' remaining claims on the grounds that Plaintiffs have failed to properly exhaust their administrative remedies as to such. As detailed below, the Court agrees that a great many of the Plaintiffs' remaining claims must be dismissed on this basis.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their

complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar

that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,*544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,*126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.


A.      Plaintiff Davis

At his deposition, Plaintiff Davis conceded that he did not submit a grievance concerning his allegations against Defendants Harry, Walker, or Swierenga. (Dkt. #53, Exhibit 12 at 16). Plaintiff further testified that while he did file a single grievance against Defendant Singleton, he did not pursue that grievance through Step III of the grievance process. (Dkt. #53, Exhibit 12 at 17-23). This evidence is sufficient for Defendants to carry their burden on the question of exhaustion. Plaintiff Davis offers

no evidence to contradict his deposition testimony or otherwise demonstrate that he properly exhausted any of his remaining claims in this matter. Instead, Plaintiff argues that he is exempt from the PLRA's exhaustion requirement because other Plaintiffs have properly exhausted similar claims.

In support of his "vicarious exhaustion" argument, Plaintiff cites to authority which stands for the proposition that "a class of prisoner-plaintiffs certified under Rule 23(b)(2) satisfies the PLRA's administrative exhaustion requirement through 'vicarious exhaustion,' i.e., when 'one or more class members ha[s] exhausted his administrative remedies with respect to each claim raised by the class." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004). As Plaintiff concedes, however, the present action is not a class action. Even if the Court assumes that "vicarious exhaustion" in the class action context is appropriate, the rationale underlying such simply does not extend to the present circumstance.

In a class action, the named or representative plaintiffs are permitted to litigate on behalf of other individuals who neither appear nor participate in the litigation. In such a circumstance it may very well be appropriate to not require the non-participating class members to exhaust the claims in question. In a multiple-plaintiff circumstance, however, each plaintiff must individually and personally participate in the action and prosecute his claims. In such a circumstance there is no justifiable rationale for disregarding the plain language of the PLRA which requires that "no action shall be brought. . .by a prisoner. . .until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also*, *Castillon v. Corrections Corp. of America, Inc.*, 2013 WL 2446480 at *11 (D. Idaho, June 4, 2013) (rejecting the vicarious exhaustion theory in the non-class action context); *Mathis v. GEO Group, Inc.*, 2011 WL 2899135 at *5 n.4 (E.D.N.C., July 18, 2011) (same); *McGoldrick v. Werholtz*, 185 Fed.

Appx. 741, 743-44 (10th Cir., June 22, 2006) (same).  Accordingly, the undersigned recommends that Plaintiff Davis' remaining claims be dismissed for failure to exhaust administrative remedies.


      B.     Plaintiff McCord

At his deposition, Plaintiff McCord conceded that while he was housed at the Muskegon Correctional Facility (MCF), the location at which all the events giving rise to this action occurred, he pursued only one grievance through all three steps of the grievance process.  (Dkt. #73, Exhibit 8 at 5). Plaintiff filed this particular grievance on December 6, 2007, against Defendants Walker and Singleton. (Dkt. #73, Exhibit 8).  In this grievance, Plaintiff alleges that Walker and Singleton made the decision to dismantle the sweat lodge that NATW members utilized in their religious services.  Plaintiff pursued this matter through all three steps of the grievance process.  Accordingly, the undersigned recommends that Plaintiff McCord's remaining claims be dismissed for failure to exhaust administrative remedies, save his claim that Defendants violated his First Amendment rights when they dismantled the sweat lodge that NATW members utilized in their religious services.


      C.     Plaintiff Cohrs

Defendants assert that Plaintiff Cohrs has failed to properly exhaust any of his remaining claims.  Defendants in their affidavits and pleadings make reference to Plaintiff's failure to include copies of his grievances with his complaint.  Such assertions represent a misunderstanding of the relevant authority.  As previously noted, Plaintiff is not required to demonstrate that he exhausted his claims.  Instead, Defendants bear the burden of demonstrating that he did not exhaust his claims.  In this respect, Defendants have satisfied their burden as to only certain of Plaintiff's claims.

Defendants have included with their motion portions of Cohrs' deposition testimony. (Dkt. #73, Exhibit 7). While this evidence may demonstrate Cohrs' inability to articulate whether he exhausted his claims, such hardly establishes that Cohrs did not properly exhaust his claims. Defendants Swierenga, Singleton, and Walker have also each included affidavits in which they assert that Plaintiff Cohrs did not file a grievance concerning the allegation that prisoners were being transferred for the purpose of preventing the practitioners of the Native American Traditional Way faith from having the five or more members necessary to conduct group worship services. (Dkt. #73, Exhibit 1 at ¶ 7; Dkt. #73, Exhibit 2 at ¶ 6; Dkt. #73, Exhibit 4 at ¶ 5).

Plaintiff has submitted no evidence to the contrary, but instead asserts that he need not exhaust this particular claim because it "is not a distinct and separate claim, but rather was one of the many tactics employed to suppress the Plaintiffs' right to freely practice their religion." (Dkt. #79 at 10). The fact that Defendants allegedly employed "many tactics" to violate Plaintiff's rights does not absolve Plaintiff of the affirmative obligation under the PLRA to properly exhaust the allegations on which his claims for relief are based. Plaintiff has, in fact, asserted, as a separate and distinct claim, that his First Amendment rights were violated by the conduct of transferring certain prisoners so as to prevent NATW members from conducting group worship services.

Plaintiff argues that it is sufficient, for exhaustion purposes, that he submitted one grievance alleging a violation of his First Amendment rights, even if the grievance in question was based on wholly different factual allegations. Plaintiff argues that such is sufficient to put Defendants on notice as to their claim, which is the ultimate purpose of the PLRA's grievance requirement. While Plaintiff is correct that affording notice to prison officials of alleged wrongdoing is one of the primary purposes underlying the PLRA's exhaustion requirement, such is the very reason why Plaintiff's

argument must be rejected. Plaintiff cannot, consistent with the exhaustion requirement, obtain relief based on allegations that Defendants transferred other prisoners so as to deny his First Amendment rights if Plaintiff never brought to the attention of prison officials that such conduct was allegedly taking place. Stated differently, by failing to bring these allegations to the attention of prison officials, Plaintiff deprived Defendants of the ability to correct or otherwise address the matter prior to the initiation of legal proceedings. The PLRA clearly precludes relief in such a circumstance. Accordingly, Plaintiff's argument in this regard is rejected.

Defendants Swierenga, Singleton, and Walker further assert that while Plaintiff Cohrs filed a Step I grievance regarding the alleged dismantling of the sweat lodge, he failed to pursue the matter through all three steps of the grievance process. (Dkt. #73, Exhibit 1 at ¶ 13; Dkt. #73, Exhibit 2 at ¶ 12; Dkt. #73, Exhibit 4 at ¶ 13). Plaintiff has submitted no evidence to the contrary.

Defendants Swierenga, Singleton, and Walker also make assertions concerning what the "grievances in this case" reveal about Plaintiff's efforts to exhaust his claims. Unlike the definitive (and unrefuted) statements that no grievances were ever filed regarding Plaintiff's prisoner transfer claim or that particular grievances were not pursued through step III of the grievance process, these latter assertions merely reference the grievances which Plaintiff attached to his complaint (i.e., the "grievances in this case"). Again, Plaintiff is not required to demonstrate that he exhausted his claims and Defendants do not satisfy their burden on this question merely by noting that Plaintiff failed to submit grievances concerning a particular claim.

Accordingly, the undersigned recommends that the following claims asserted by Plaintiff Cohrs be dismissed for failure to exhaust administrative remedies: (1) Defendants transferred prisoners so as to prevent the members of the Native American Traditional Way from having the requisite number

of members to conduct group worship services and (2) Defendants ordered that the Native American Traditional Way sweat lodge be dismantled. The undersigned recommends that Defendants' motion to dismiss on exhaustion grounds be denied as to Plaintiff Cohrs' other remaining claims.

### D.     Plaintiff Hollon

Defendants assert that Plaintiff Hollon failed to properly exhaust any of his remaining claims, but have failed - with one exception - to introduce evidence sufficient to satisfy their burden on this question. Specifically, Defendants Swierenga, Singleton, and Walker have each included affidavits in which they assert that Plaintiff Hollon did not file a grievance concerning the allegation that prisoners were being transferred for the purpose of preventing the practitioners of the Native American Traditional Way faith from having the five or more members necessary to conduct group worship services. (Dkt. #73, Exhibit 1 at ¶ 7; Dkt. #73, Exhibit 2 at ¶ 6; Dkt. #73, Exhibit 4 at ¶ 5). Plaintiff has submitted no evidence to the contrary. Furthermore, for the reasons discussed above, Plaintiff's argument that he was not required to properly exhaust this particular claim is rejected.

Defendants Swierenga, Singleton, and Walker also make assertions concerning what the "grievances in this case" reveal about Plaintiff's efforts to exhaust his claims. Unlike the definitive (and unrefuted) statements that no grievances were ever filed regarding the prisoner transfer claims, these latter assertions merely reference the grievances which Plaintiff attached to his complaint (i.e., the "grievances in this case"). Again, Plaintiff is not required to demonstrate that he exhausted his claims and Defendants do not satisfy their burden on this question merely by noting that Plaintiff failed to submit grievances concerning a particular claim.

Accordingly, the undersigned recommends that Plaintiff Hollon's claim that Defendants transferred prisoners so as to prevent NATW members from having the requisite number of members to conduct group worship services be dismissed for failure to exhaust administrative remedies. The undersigned recommends that Defendants' motion to dismiss on exhaustion grounds be denied as to Plaintiff Hollon's other remaining claims.

E.      Plaintiff Niezgoda

Defendants assert that Plaintiff Niezgoda failed to properly exhaust many of his remaining claims, but have failed - with one exception - to introduce evidence sufficient to satisfy their burden on this question. Specifically, Defendants Swierenga, Singleton, and Walker have each included affidavits in which they assert that Plaintiff Niezgoda did not file a grievance concerning the allegation that prisoners were being transferred for the purpose of preventing the practitioners of the Native American Traditional Way faith from having the five or more members necessary to conduct group worship services. (Dkt. #73, Exhibit 1 at ¶ 7; Dkt. #73, Exhibit 2 at ¶ 6; Dkt. #73, Exhibit 4 at ¶ 5). Plaintiff has submitted no evidence to the contrary. Furthermore, for the reasons discussed above, Plaintiff's argument that he was not required to properly exhaust this particular claim is rejected.

Defendants Swierenga, Singleton, and Walker also make assertions concerning what the "grievances in this case" reveal about Plaintiff's efforts to exhaust his claims. Unlike the definitive (and unrefuted) statements that no grievances were ever filed regarding the prisoner transfer claims, these latter assertions merely reference the grievances which Plaintiffs attached to their complaint (i.e., the "grievances in this case"). Again, Plaintiff is not required to demonstrate that he exhausted his claims

and Defendants do not satisfy their burden on this question merely by noting that Plaintiff failed to submit grievances concerning a particular claim.

Accordingly, the undersigned recommends that Plaintiff Niezgoda's claim that Defendants transferred prisoners so as to prevent NATW members from having the requisite number of members to conduct group worship services be dismissed for failure to exhaust administrative remedies. The undersigned recommends that Defendants' motion to dismiss on exhaustion grounds be denied as to Plaintiff Niezgoda's other remaining claims.

### F.       Plaintiff Rumsey

Defendants assert that Plaintiff Rumsey has failed to properly exhaust many of his remaining claims, but fail to meet their burden on this question, with one exception. Defendants Swierenga, Singleton, and Walker have each included affidavits in which they assert that Plaintiff Rumsey did not file a grievance concerning the allegation that prisoners were being transferred for the purpose of preventing the practitioners of the Native American Traditional Way faith from having the five or more members necessary to conduct group worship services. (Dkt. #73, Exhibit 1 at ¶ 7; Dkt. #73, Exhibit 2 at ¶ 6; Dkt. #73, Exhibit 4 at ¶ 5). Plaintiff has submitted no evidence to the contrary. Furthermore, for the reasons discussed above, Plaintiff's argument that he was not required to properly exhaust this particular claim is rejected.

Defendants Swierenga, Singleton, and Walker also make assertions concerning what the "grievances in this case" reveal about Plaintiff's efforts to exhaust his claims. Unlike the definitive (and unrefuted) statements that no grievances were ever filed regarding the prisoner transfer claims, these latter assertions merely reference the grievances which Plaintiff attached to his complaint (i.e., the

"grievances in this case").  Again, Plaintiff is not required to demonstrate that he exhausted his claims and Defendants do not satisfy their burden on this question merely by noting that Plaintiff failed to submit grievances concerning a particular claim.

Accordingly, the undersigned recommends that Plaintiff Rumsey's claim that Defendants transferred prisoners so as to prevent NATW members from having the requisite number of members to conduct group worship services be dismissed for failure to exhaust administrative remedies.  The undersigned recommends that Defendants' motion to dismiss on exhaustion grounds be denied as to Plaintiff Rumsey's other remaining claims.

In conclusion, with respect to the question of exhaustion, the undersigned recommends the following: (1) all of Plaintiff Davis' remaining claims be dismissed; (2) all of Plaintiff McCord's remaining claims be dismissed except for his claim that Defendants violated his First Amendment rights when they dismantled the sweat lodge that NATW members utilized in their religious services; (3) Plaintiff Cohrs' remaining claims go forward, except for his claims that Defendants transferred prisoners so as to prevent NATW members from having the requisite number of members to conduct group worship services and that Defendants ordered that the NATW sweat lodge be dismantled, both of which be dismissed for failure to exhaust administrative remedies; and (4) the remaining claims asserted by Plaintiffs Hollon, Niezgoda, and Rumsey go forward, except for their claim that Defendants transferred prisoners so as to prevent NATW members from having the requisite number of members to conduct group worship services, which be dismissed for failure to exhaust administrative remedies.

**IV.           Motion for Summary Judgment**

Defendants also move for summary judgment as to Plaintiffs' remaining claims.  As discussed below, the undersigned recommends that Defendants are entitled to summary judgment as to many of the remaining claims in this matter.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir.

2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

A. Sweat Lodge

As detailed above, Plaintiffs allege that their First Amendment rights were violated when Defendants dismantled the sweat lodge that NATW members utilized in certain religious ceremonies. (Dkt. #1 at ¶ 15a).

1. Defendants Swierenga and Walker

Defendants Swierenga and Walker have submitted evidence that they were not involved in the decision to "dismantle" the sweat lodge. (Dkt. #73, Exhibit 1 at ¶ 14; Dkt. #73, Exhibit 2 at ¶ 14; Dkt. #73, Exhibit 4 at ¶ 15). Plaintiffs offer no evidence to the contrary. Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. *See King v. Zamiara*, 680 F.3d 686, 706 (6th Cir. 2012). Accordingly, the undersigned recommends that Defendants Swierenga and Walker are entitled to summary judgment as to this particular claim.

2.     Defendants Singleton and Harry

As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution").  Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).  However, "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations," *Wolfish*, 441 U.S. at 545, as operating a jail is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights.  *See Turner*, 482 U.S. at 85.  The standard by which this balancing occurs was articulated by the *Turner* Court, which held that

"when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

> 1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. whether there are alternative means of exercising the right that remain open to prison inmates;
>
> 3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

With respect to which party bears the burden concerning the *Turner* analysis, the Supreme Court has held that "[t]he burden. . .is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). This statement clearly places on the prisoner the burden as to the last three *Turner* factors, but says nothing as to which party bears the burden as to the initial factor. As subsequent courts have concluded, the burden to articulate the rationale for a challenged action must rest with prison officials. As the Sixth Circuit observed:

> We note that while the burden is on the prisoner to disprove the validity of the regulation at issue. . .Defendants must still articulate their interest in the regulation. . .Otherwise, a prisoner would be forced to hypothesize any number of potential legitimate penological interests and then disprove a reasonable relationship between each and the regulation at issue.

*Figel v. Overton*, 121 Fed. Appx. 642, 646 n.2 (6th Cir., Feb. 4, 2005) (internal citations omitted); *see also*, *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012) ("the prison has the burden of demonstrating the First *Turner* Factor").

The Court is persuaded by this reasoning and concludes, therefore, that with respect to the *Turner* factors, Defendants bear the initial burden to articulate a valid, rational connection between the challenged action and the legitimate governmental interest which motivated such. This particular burden is "slight, and in certain instances, the connection may be a matter of common sense." *Johnson*, 669 F.3d at 156. The Court further concludes that with respect to the final three *Turner* factors, Plaintiffs bear the burden.

With respect to the initial *Turner* factor, Defendants have submitted evidence that the decision to dismantle the sweat lodge was motivated by legitimate security concerns. (Dkt. #73, Exhibit 2 at ¶ 14). Specifically, Defendant Singleton asserts that the rocks, three to six inches in diameter, that

comprised part of the sweat lodge "could be used as weapons. . .or used to damage other prison property or as a pounding tool to break locks." (Dkt. #73, Exhibit 2 at ¶ 14). Defendant Singleton asserts that he was further concerned because the area in which the sweat lodge was located was in the vicinity of two guard towers that, due to budget cuts, were no longer staffed by prison guards. (Dkt. #73, Exhibit 2 at ¶ 14). Accordingly, the rocks in question were removed from the prison yard. Plaintiff Cohrs testified at his deposition that these rocks were discarded in a dumpster. (Dkt. #73, Exhibit 7 at 9-11). This evidence easily satisfies Defendants' burden as to the first Turner factor.

Plaintiffs attempt to avoid this conclusion by arguing that the sweat lodge had been in this particular location for many years without incident. Even if this assertion were accurate, it is not particularly relevant. Prison officials are not required to wait to address a potential threat until after such has resulted in a disturbance or other circumstance adverse to the order and security of the correctional facility. *See, e.g., Jackson v. Thurmer*, 748 F.Supp.2d 990, 1001 (W.D. Wis., Sept. 29, 2010) ("the First Amendment would not prohibit prison officials from taking proactive measures to prevent an assault").

Plaintiffs also find great significance in Defendant Harry's deposition testimony that no sweat lodge existed. (Dkt. #79, Exhibit 4). A review of Defendant Harry's testimony, however, reveals that she did not dispute the existence of the "structure" in question which Defendant Singleton ordered be dismantled. Defendant Harry simply disagreed that the structure in question was actually a sweat lodge as she understood the definition of such. In sum, this testimony demonstrates nothing more than a possible disagreement between Defendant Harry and Plaintiffs as to the proper term to be applied to the structure which was ultimately dismantled. Such a disagreement is utterly irrelevant in this matter and Plaintiffs' reliance on such fails to advance their position.

As for the remaining *Turner* factors, such likewise weigh in favor of Defendants' motion for summary judgment. Plaintiffs have failed to establish that there do not exist alternative means of exercising their religious rights. While Plaintiff Rumsey asserts that a sweat lodge "is akin to other religious temples," (dkt. #79), inmates simply do not enjoy a constitutional right to construct a "religious temple" in a particular location regardless of the legitimate security concerns implicated by such. Moreover, the relevant question is not the subjective significance to Plaintiff of the sweat lodge, but rather whether there exists "alternative means of exercising the right." Plaintiffs have failed to establish that there did not exist alternative means to practice their religion. Defendants, on the other hand, have submitted evidence that alternative means to practice their religion were available to Plaintiffs. (Dkt. #73, Exhibit 1 at ¶¶ 16-19).

As for whether there existed "ready alternatives" available that would have fully accommodated Plaintiffs' rights, Defendants have submitted evidence that prison officials offered to relocate the sweat lodge to a different location, but that such offer was rejected. (Dkt. #73, Exhibit 1 at ¶ 14; Dkt. #73, Exhibit 2 at ¶ 15; Dkt. #73, Exhibit 4 at ¶ 16). Finally, to permit a structure to exist in a location and in circumstances which implicate legitimate security concerns would impose an unreasonable burden on the already limited resources of correctional facilities. Accordingly, the undersigned recommends that Defendants Singleton and Harry are entitled to summary judgment as to this claim.

B.      Concealment of Religious Items

Plaintiffs allege that Defendant Swierenga stated that certain unidentified religious "artifacts and supplies" had been stolen when, in fact, Swierenga simply "concealed" them in a locker.

(Dkt. #1 at ¶ 15b).  Defendant Swierenga denies this allegation in his affidavit," (dkt. #73, exhibit 1 at ¶ 19), and Plaintiffs have presented no evidence to the contrary.  The undersigned, therefore, recommends that Defendant Swierenga is entitled to summary judgment as to this claim.


      C.      Outdoor Religious Services

Plaintiffs allege that Defendants ordered them "to move their [religious] ceremonies indoors" which prevented them from engaging in various ceremonial activities required of their faith. (Dkt. #1 at ¶ 15c).  Defendant Swierenga asserts in his affidavit that he had "no personal involvement in telling [Native American Traditional Way] practitioners to move [their] ceremonies indoors."  (Dkt. #73, Exhibit 1 at ¶ 19).  Defendants, otherwise, offer no evidence in support of their motion for summary judgment as to this particular claim.  Accordingly, the undersigned recommends that Defendant Swierenga's motion for summary judgment be granted as to this claim, but that Plaintiffs' claim go forward as to Defendants Singleton, Walker, and Harry.


      D.      Group Services

Plaintiffs next allege that Defendants enacted a policy "requiring all religious organizations to have membership of 5 or more in order to be able to gather and/or use prison facilities for worship."  (Dkt. #1 at ¶ 15d).  As detailed above, Defendants have failed to establish that Plaintiffs Cohrs, Hollon, Niezgoda, and Rumsey failed to properly exhaust this claim.

Defendants assert that they are entitled to summary judgment because "[t]he MDOC's five prisoner minimum requirement for holding group religious services has been upheld as constitutional under the First Amendment's free exercise clause."  (Dkt. #73 at 15).  Defendants

previously asserted the identical argument in a previous motion for relief. (Dkt. #34). The Court

rejected Defendants' argument thusly:

> In support of their argument, Defendants offer no analysis, but instead simply cite to *Spies v. Voinovich*, 173 F.3d 398, 404-05 (6th Cir. 1999), for the proposition that "the MDOC's five prisoner minimum requirement for holding group religious services has been upheld as constitutional." Defendants' argument is badly misplaced and mistakes a determination that one particular challenge to a similar rule equates to a holding that such a rule is in the future completely immune from challenge.
>
> In *Spies*, an Ohio inmate challenged certain prison practices, including a policy that "require[d] the existence of five documented members of a faith interesting in forming a faith group before such a group is formed." *Id.* at 401-03. The district court dismissed this particular claim in the context of a motion for summary judgment. The inmate appealed this determination to the Sixth Circuit. The *Spies* court affirmed the dismissal of this claim, finding that the evidence presented to the district court supported such. *Id.* at 402-05. The court did not conclude that the inmate's challenge to the policy in question failed to state upon which relief may be granted; rather, the court found that summary judgment was appropriate because the evidence submitted revealed that the challenged rule was reasonably related to a legitimate penological objective. Here, Defendants have submitted no evidence, but instead simply assert that Plaintiffs' allegations fail to state a claim.

(Dkt. #37 at 12).

Defendants, relying on *Spies*, again assert that the challenged policy is immune from

challenge. Defendants offer no evidence in support of their request for relief. Specifically, Defendants

offer no evidence that either the policy or the enforcement thereof was undertaken for any legitimate

penological purpose. Again, as the Court previously indicated, the fact that a similar policy was found

constitutional when enacted in furtherance of legitimate penological objectives does not immunize the

policy presently being challenged where Defendants offer no evidence that the challenged policy bears

any relationship to a legitimate penological objective. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be denied as to this claim.

E.      Smoking Ban

Finally, Plaintiffs allege that the "MDOC imposed a ban on smoking at all MDOC facilities" the effect of which violated Plaintiffs' ability to freely practice their religion. (Dkt. #1 at ¶ 15g). On February 1, 2009, the MDOC enacted a policy which provides, in part, that "[o]ffenders are prohibited from possessing tobacco products except. . .for group religious ceremonies or activities." Michigan Department of Corrections Policy Directive 01.03.140 ¶ I (eff. Feb. 1, 2009).

As Defendants correctly assert, MDOC Policy Directives are not developed, promulgated, or enacted by local prison officials such as Defendants, but rather the Director of the Michigan Department of Corrections. *See* Michigan Department of Corrections Policy Directive 01.04.110 ¶¶ C-I (eff. July 1, 2007). As Defendants were not involved in developing, promulgating, or enacting the challenged policy, the undersigned recommends that to the extent that Plaintiffs are challenging the enactment of this policy, Defendants are entitled to summary judgment.

To the extent that Plaintiffs are challenging the manner in which the smoking ban was applied, Defendants are likewise entitled to relief as Plaintiffs make absolutely no factual allegations in their complaint against any Defendant regarding this particular claim. Instead, Plaintiffs merely assert the unsubstantiated legal conclusion that the smoking ban, "as applied," is unconstitutional. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to this claim or in the alternative that this claim be dismissed for failure to state a claim on which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (where a plaintiff names an

individual as a defendant, but fails to make any factual allegations against that individual, the complaint is subject to dismissal); *Frazier v. Michigan*, 41 Fed. Appx. 762, 764 (6th Cir., July 22, 2002) ("a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights").

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion to Dismiss Plaintiff Barnes and Plaintiff Davis</u>, (dkt. #53), be **granted**; <u>Defendants' Motion for Summary Judgment</u>, (dkt. #72), be **granted in part and denied in part** as detailed herein. Specifically, the undersigned recommends that Plaintiffs' remaining claims all be dismissed as detailed herein, except for: (1) the claim asserted by Plaintiffs Cohrs, Hollon, Niezgoda, and Rumsey that Defendants Singleton, Walker, and Harry ordered them "to move their [religious] ceremonies indoors" which prevented them from engaging in various ceremonial activities required of their faith, and (2) the claim asserted by Plaintiffs Cohrs, Hollon, Niezgoda, and Rumsey that Defendants unlawfully denied them the right to conduct group worship services unless five or more NATW members were present.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date: June 24, 2013                    ＿/s/ Ellen S. Carmody＿＿＿＿＿＿
                                       ELLEN S. CARMODY
                                       United States Magistrate Judge