UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES RUMSEY, et al.,

   Plaintiffs,        Hon. Janet T. Neff

v.               Case No. 1:10 CV 880

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

   Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Renewed Motion for Summary Judgment</u>. (Dkt. #104). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action **terminated**.

## BACKGROUND

This action was initiated on June 23, 2010, by seven present and former prisoners: (1) Charles Rumsey; (2) Herschel Davis; (3) Steven Cohrs; (4) Timothy Hollon; (5) Morris McCord; (6) Leo Niezgoda; and (7) Warder Barnes. Plaintiffs asserted the present action against the Michigan Department of Corrections (MDOC) and the following individuals: (1) Mary Berghuis, (2) Carol Aardsma, (3) Rick Smith, (4) Sheryl DiEpifanio, (5) Mark Sutherby, (6) Raymond Swierenga, (7) Shirlee Harry, (8) Michael Singleton, (9) Sharon Walker, and (10) Sharon Wells. Plaintiffs allege that Defendants violated their First Amendment right to freely practice their religion.

The following allegations are contained in Plaintiffs' complaint. (Dkt. #1). Plaintiffs "are all practitioners of the religion known as the 'Native American Traditional Way'" which is "based upon the teachings and practices of some Native American Tribes." One of the practices with which adherents of this faith "are required" to comply is "congregating and offering prayers within a 'sweat lodge.'" More than 15 years prior to the events giving rise to this action, members of the Native American Traditional Way (NATW) constructed a sweat lodge on the grounds of the Muskegon Correctional Facility (MCF). Beginning in 2005 and continuing until MCF was closed in 2010, Defendants "conspired, combined and/or acted in concert to deny" to Plaintiffs the ability to freely practice their religion.

As the Court has previously discussed, (dkt. #83), Plaintiffs' complaint asserted six separate claims: (1) Defendants directed that the sweat lodge that NATW members utilized in their religious services be dismantled; (2) Defendant Swierenga "concealed" from Plaintiffs certain religious artifacts and supplies; (3) Defendants ordered Plaintiffs "to move their [religious] ceremonies indoors;" (4) Defendants enacted a policy "requiring all religious organizations to have membership of 5 or more in order to be able to gather and/or use prison facilities for worship;" (5) whenever NATW membership "exceeded the 5 member, membership requirement. . .defendants caused the transfer of one or more members of the faith to other facilities;" and (6) the "MDOC imposed a ban on smoking at all MDOC facilities" the effect of which violated Plaintiffs' ability to freely practice their religion. (Dkt. #1 at ¶¶ 15(a)-(g)).

At this juncture, Defendants having filed multiple dispositive motions, only the following claims remain: (1) the claim asserted by Plaintiffs Cohrs, Hollon, Niezgoda, and Rumsey that Defendants Singleton, Walker, and Harry ordered them "to move their [religious] ceremonies indoors" which

prevented them from engaging in various ceremonial activities required of their faith, and (2) the claim asserted by Plaintiffs Cohrs, Hollon, Niezgoda, and Rumsey that Defendants Swierenga, Harry, Singleton, and Walker unlawfully denied them the right to conduct group worship services unless five or more NATW members were present. (Dkt. #83, 93). Defendants Swierenga, Harry, Singleton, and Walker now move for summary judgment as to these remaining claims.

## ANALYSIS

**I.        Exhaustion**

Defendants first assert that the remaining claims asserted by Plaintiffs Cohrs, Hollon, Niezgoda, and Rumsey be dismissed on the ground that Plaintiffs have failed to properly exhaust their administrative remedies.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from

> system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert.*

*denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

In support of their motion, Defendants have submitted an affidavit executed by Richard Russell, Manager of the Grievance Section of the Michigan Department of Corrections. (Dkt. #87, Exhibit 1). Russell asserts that all grievances, including "[a]ll Step III grievance appeals," are entered into a grievance tracking database. Russell further asserts that a search of the grievance database reveals that between 2006 through March 14, 2011, none of the Plaintiffs in this matter pursued, through all three steps of the grievance process, any grievance against Defendants Swierenga, Harry, Singleton, or Walker "regarding the NATW members being ordered to move their religious ceremonies indoors, or that Defendants enacted a policy that there must be 5 members for group religious ceremonies." *Id.*

In response to this evidence, Plaintiffs have submitted two affidavits. First, Plaintiff Cohrs has submitted an affidavit in which he asserts that he submitted a grievance regarding his claim that MDOC policy which prohibited smoking at all MDOC facilities violated his right to freely practice his religion. (Dkt. #109, Exhibit A). Plaintiff Cohrs asserts that he pursued this matter through all three steps of the grievance process. *Id.* This evidence does not advance Plaintiffs' cause, however, as Plaintiffs' claims that the ban on smoking at all MDOC facilities violated their right to freely practice their religion has already been dismissed as noted above. In other words, Plaintiff Cohrs' affidavit does

not create a genuine issue of material fact regarding whether Plaintiffs Cohrs, Hollon, Niezgoda, and Rumsey exhausted any of the claims remaining in this matter.

Plaintiff Rumsey has also submitted an affidavit. (Dkt. #109, Exhibit B). In his affidavit, Rumsey asserts that he "filed numerous grievances" regarding the claim that MDOC policy which prohibited smoking at all MDOC facilities violated his right to freely practice his religion. This assertion fails to advance Plaintiffs' position for two reasons. First, this assertion is too vague and ambiguous to create a genuine issue of material fact on the exhaustion question. To counter the evidence submitted by Defendants, Plaintiff must do more than simply assert, without any specificity, that he "filed numerous grievances." Furthermore, as discussed immediately above, Plaintiffs' claims regarding MDOC smoking policy have already been dismissed.

Plaintiff Rumsey also asserts that he filed two grievances regarding "the retaliatory transfer of prisoners" so as to prevent NATW from holding group worship services. Plaintiff has specifically identified these grievances, which are attached to Plaintiffs' complaint. (Dkt. #1 Exhibits A-1 and A-2). Neither of these grievances, however, is asserted against any of the remaining Defendants. Furthermore, the allegations in these grievances concern Plaintiffs' retaliatory transfer claims which, as noted above, have already been dismissed.

In sum, the evidence submitted by Plaintiffs Cohrs and Rumsey is insufficient to create a genuine issue of material fact on the question whether Plaintiffs Cohrs, Hollon, Niezgoda, and Rumsey properly exhausted their administrative remedies with respect to any of the claims remaining in this matter. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted.

**II.      Summary Judgment**

Defendants, in the alternative, also move for summary judgment as to Plaintiffs' claim that Defendants enacted an unlawful policy "requiring all religious organizations to have membership of 5 or more in order to be able to gather and/or use prison facilities for worship."

   A.     Summary Judgment Standard

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the*

*Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

B. Analysis

There does not appear to be any dispute that prison officials declined to permit NATW group services unless more than five NATW adherents intended to participate. Plaintiffs attached to their complaint copies of two memoranda indicating that "due to low attendance," NATW group services "will not be scheduled until there are at least five active participants." (Dkt. #1, Exhibit A at ID pages 36-37). Plaintiffs allege that the failure to permit NATW members to conduct group services in the absence of five participants violates their First Amendment right to freely practice their religion.

As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S.

342, 348 (1987). However, "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations," *Wolfish*, 441 U.S. at 545, as operating a jail is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

    1.    there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

With respect to which party bears the burden concerning the *Turner* analysis, the Supreme Court has held that "[t]he burden. . .is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). This statement clearly places on the prisoner the burden as to the last three *Turner* factors, but says nothing as to which party bears the burden as to the initial factor. As subsequent courts have concluded, the burden to articulate the rationale for a challenged action must rest with prison officials. As the Sixth Circuit observed:

> We note that while the burden is on the prisoner to disprove the validity
> of the regulation at issue. . .Defendants must still articulate their interest
> in the regulation. . .Otherwise, a prisoner would be forced to hypothesize

>any number of potential legitimate penological interests and then disprove a reasonable relationship between each and the regulation at issue.

*Figel v. Overton*, 121 Fed. Appx. 642, 646 n.2 (6th Cir., Feb. 4, 2005) (internal citations omitted); *see also*, *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012) ("the prison has the burden of demonstrating the First *Turner* Factor").

The Court is persuaded by this reasoning and concludes, therefore, that with respect to the *Turner* factors, Defendants bear the initial burden to articulate a valid, rational connection between the challenged action and the legitimate governmental interest which motivated such. This particular burden is "slight, and in certain instances, the connection may be a matter of common sense." *Johnson*, 669 F.3d at 156. The Court further concludes that with respect to the final three *Turner* factors, Plaintiffs bear the burden.

With respect to the initial *Turner* factor, Defendants have submitted an affidavit executed by Edward Mize, Administrator of the Operations Division in Correctional Facilities Administration. (Dkt. #87, Exhibit 2). Mize asserts that "[o]ther than Wicca, each [recognized religious] group is allowed a weekly religious service if resources permit." Prison officials, however, have determined not to provide a group service "if there are less than five prisoners within the same security level of that institution who actively participate in the religious activities of the group." According to Mize, this requirement was enacted "to ensure that available resources are utilized to meet the religious needs of the broadest range of prisoners." Mize further asserts that because any group activity, including "group religious services," could be "used as a subterfuge for gang activity, orchestrating escapes or institutional disturbances, planning assaults on staff or other prisoners, passing contraband, engaging in sexual activity, or engaging in other conduct violating MDOC rules and regulations," "continuous in-room staff

supervision is required for all prisoner group meetings." Providing this level of supervision "tax[es] already limited MDOC resources, including staffing, time, and space." *Id.*

This evidence easily satisfies Defendants' burden with respect to the first *Turner* factor. As the Sixth Circuit has recognized, courts may "take into account the level of inmate interest in a particular religion when determining whether to hold services." *Colvin v. Caruso*, 605 F.3d 282, 291 (6th Cir. 2010). The court has likewise upheld a similar policy, enacted in pursuit of legitimate penological goals, whereby group religious services would not be conducted if less then five prisoners wished to participate. *See Spies v. Voinovich*, 173 F.3d 398, 404-05 (6th Cir. 1999). Plaintiffs have failed to submit any evidence even suggesting that any of the three remaining factors weigh in their favor. The Court, therefore, finds that the challenged policy constitutes a reasonable method of pursuing legitimate penological objectives. Accordingly, the undersigned recommends, in the alternative, that Defendants' motion for summary judgment as to this particular claim be **granted**.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Renewed Motion for Summary Judgment</u>, (dkt. #104), be **granted** and this action **terminated**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: February 13, 2014   /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge